**Noel ATKINSON, et al., Plaintiffs,**

v.

**GENERAL RESEARCH OF ELECTRONICS, INC., et al., Defendants.**

No. 95 C 6708.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 17, 1998.

Joseph Hosteny, Arthur Gasey, Niro, Scavone, Haller & Niro, Chicago, IL, for Plaintiffs.

Raiford Blackstone, Linda, Palomar, Trexler, Bushnell, Giangiorgi, Blackstone, Ltd., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

In late May 1998, at the time of this Court's approval of the proposed final pretrial order ("FPTO") that had been jointly tendered by the litigants in this action brought by Noel Atkinson and Compass Communications, Inc. against General Research of Electronics, Inc. ("GRE") and Tandy Corporation ("Tandy"), defendants proffered four "Motions in Limine/Rule 16 Motions" (Dkt. No. 40). That filing was followed a month later by defendants' memorandum in support of the motions (both defendants are represented by the same counsel), and the motions became ready for decision upon the later receipt of plaintiffs' responsive memoranda. For the reasons stated in this memorandum opinion and order, all but one of defendants' motions are denied and the remaining motion is granted.

### Choice of Law—Statute of Limitations

Both GRE (which urges the application of Indiana law) and Tandy (which plumps for either Texas or Delaware law, but agrees to the application of Indiana law instead) resist the application of Illinois law to plaintiffs' breach of contract and unjust enrichment claims against GRE and to their trade secret misappropriation claims against both GRE and Tandy. But defendants' memorandum in support of their motion makes it plain that their real goal is to bar

substantially all of those claims on statute of limitations grounds, for that is the only aspect of Indiana and Texas law that defendants seek to call into play. Because defendants have waived (or, more precisely, have forfeited [1]) that statute of limitations defense, their motion is denied.

This lawsuit was fully 2 1/2 years old before it arrived at the FPTO stage of trial readiness. Yet despite their awareness all along of the nature of plaintiffs' claims:

1. Both GRE and Tandy initially filed Answers that included multiple affirmative defenses, one of which asserted a partial limitations bar under 17 U.S.C. § 507 of the Complaint's copyright claims. That assertion leaves no room for any argument that defendants were unaware of the potential for cutting off one or more of plaintiffs' claims by raising statutes of limitations as a defense. Yet neither GRE's nor Tandy's original responsive pleading even hinted at such a statute of limitations affirmative defense as to any of the several state law claims that are now at issue.

2. In September 1997, with the lawsuit then nearly two years old, GRE filed an Amended Answer, again containing the same affirmative defenses (including the one referred to in the preceding numbered paragraph)—but once again the new pleading contained no whisper of the statute of limitations defense that is now sought to be inserted into the case. As for Tandy, in December 1997 it sought leave to file an amended pleading that in part would have added still another affirmative defense to those it had previously advanced—and that proposed pleading was also totally silent as to the presently-pushed statute of limitations defense to the state law claims.

Under the circumstances, then, this Court follows the lead of such cases as *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 474–75 (7th Cir.1991), *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 235 (7th Cir.

1991) and *Johnson v. Heckler*, 769 F.2d 1202, 1209 (7th Cir.1985), *reconfirmed on remand sub nom.* *Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir.1990) (per curiam) and holds that the newly-advanced affirmative defense is itself untimely under Fed.R.Civ.P. ("Rule") 8(c) and 12(b)—rules that require such affirmative defenses to be advanced at the first opportunity, not late in the day—and that the statute of limitations issue has therefore been forfeited (or, if one prefers, waived). To the same effect, see the multitude of cases cited in 5 Charles Wright & Arthur Miller, *Federal Practice and Procedure: Civil 2d* § 1278, at 477 & n. 1 (2d ed.1990 and 1998 pocket part); *id.* at 484 & n. 11.

To be sure, there are circumstances where other equitable considerations (such as the recent discovery of facts supporting such a defense) may call for a different response (see, e.g., *Siwik*, 945 F.Supp. at 1166). But this is not one of those cases. Defendants' motions (Dkt. No. 40–1 and 40–2) are denied.

### Defendants' Counsel as Witness

■ Raiford Blackstone, Jr. ("Blackstone") is lead counsel for both GRE and Tandy. After plaintiffs had included Blackstone in their potential witness list in the FPTO, defendants moved to preclude plaintiffs from calling him to the stand at trial. That motion fails for three independent reasons.

To begin with, defendants point to what they say would be Blackstone's required disqualification under this District Court's Rule of Professional Conduct ("Conduct Rule") 3.7(a).[2] What neither side appears to have noted, though, is that the prohibition in Conduct Rule 3.7(a) reads this way (emphasis added):

A lawyer shall not act as an advocate in a trial or evidentiary proceeding if the lawyer knows or reasonably should know that the lawyer may be called as a witness

---

1. As this Court has frequently pointed out (see, e.g., *Siwik v. Marshall Field & Co.*, 945 F.Supp. 1158, 1166 n. 7 (N.D.Ill.1996)), waiver in the strict sense relates to the voluntary relinquishment of a known right—and it cannot fairly be said that GRE and Tandy had really wanted to give up the limitations argument that they have now advanced so late in the game.

2. Defendants cite the corresponding Illinois Supreme Court's Conduct Rule, but the two provisions are substantively identical (though worded a tad differently).

therein *on behalf of the client*, except that. . . .

In this case, however, Blackstone is not proposed to be called as a witness *on behalf of his clients* but rather by plaintiffs—so that the Conduct Rule literally does not apply.

That distinction has obvious significance in light of the principles that underpin Conduct Rule 3.7(a) (see *United States v. Johnston*, 690 F.2d 638, 642–44 (7th Cir.1982)). For example, if the lawyer who is handling a case also takes the stand on behalf of his or her client, there is a natural concern that "the performance of dual roles by a [lawyer] might create confusion on the part of the trier of fact as to whether the [lawyer] is speaking in the capacity of an advocate or of a witness, thus raising the possibility of the trier according testimonial credit to the [lawyer's] closing argument" (*id.*). But that and each of the other policy rationales for imposing a restraint on lawyer testimony involve potential advantages for the client who seeks to make the lawyer a witness. And if as here it is the opponent rather than the client who calls the lawyer to the stand, the opponent cannot complain about any such risks— and here plaintiffs have not done so.

Apart from that consideration, plaintiffs argue with some force that even if the Conduct Rule were applicable to the current situation (as it does not appear to be), one of that Rule's exceptions to its prohibition against the lawyer-witness would still apply here: Conduct Rule 3.7(a)(4)'s provision that the lawyer can stay in the case qua lawyer despite such testimony "if refusal to act as an advocate would work a substantial hardship on the client." So defendants' effort to keep Blackstone's testimony out of the case also fails for that independent reason.

Finally, plaintiffs' responsive memorandum has confirmed their willingness, if need be, to accept Blackstone's affidavit covering the substance of his testimony in any event. Defendants' motion has thus sustained three strikes in a game in which one strike is out. That motion (Dkt. No. 40–3) is also denied.

### Plaintiffs' Designated Expert

Plaintiffs have designated Lawrence Vandewalle ("Vandewalle") as their expert witness. Pointing to asserted deficiencies disclosed by Vandewalle's Rule 26(a)(2)(B) report and his deposition testimony, defendants move to exclude any testimony on his part. Again their motion does not withstand analysis.

As chance would have it, the motion directly implicates two widely-separated aspects of this Court's own background and experience. For reasons that will become apparent, those aspects will be dealt with in reverse chronological order.

First, when Chief Justice Rehnquist reconstituted the Advisory Committee on the Rules of Evidence ("Evidence Rules") about six years ago after a nearly two-decade hiatus, he appointed this Court as one of the Committee members. This Court has served in that capacity ever since, most recently as chairman of a subcommittee appointed to draft revised Evidence Rules 701, 702 and 703 in light of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its numerous progeny, coupled with the drafting of new Advisory Notes to accompany the revised Evidence Rules. After the subcommittee's work was completed and then approved, first by the entire Committee and then by the Standing Committee on Rules of Practice and Procedure, the new proposals have been the subject of a public hearing in Washington, D.C., with two more public hearings scheduled for early next year.

Needless to say, in the process of carrying out that assignment this Court has become deeply familiar with *Daubert* and with all later developments in the area, having worked closely with the Committee's extraordinarily able Reporter (Fordham Law School Professor Daniel Capra) and having considered virtually every significant post-*Daubert* decision in the country. Suffice it to say that, as will be touched on a bit later in this opinion, such familiarity clearly teaches that defendants' line of attack on Vandewalle and his testimony is impermissibly simplistic.

For the second relevant background factor, it is necessary to go back a half century plus a few years. At that time this Court, having volunteered for service in the United States Navy in World War II upon graduating from college with a major in mathematics (and an accompanying minor in what was

labeled theoretical physics—courses that in actuality were essentially more studies in higher mathematics), received an ensign's commission and was then assigned to attend the Navy's radar school. At that time radar was in its infancy, and it was necessary to acquire skills in a then highly sophisticated field of electronics through nine months' intensive instruction at both Harvard and Massachusetts Institute of Technology, and then (and more significantly) through learning by doing.

So it was possible to become a true expert in electronic circuitry at the ripe old age of 19 or 20 [3] as the result of both training and experience—a background not meaningfully different from that described in Vandewalle's curriculum vitae. And although in this Court's case that expertise has long since vanished with the passage of time and with the shift to a totally different intellectual discipline (so much so that this Court now can do no better than to turn on a TV set and its associated VCR equipment with a reasonable likelihood of success), the point is that it simply won't do for defendants to pooh-pooh Vandewalle's Navy-acquired knowhow in electronics coupled with his continued involvement in other highly relevant technical areas as purportedly disqualifying him from testifying as an expert in the limited areas proposed by plaintiffs.

■ To return more specifically to the case at hand, defendants would have us ignore the fact that Evidence Rule 702 permits expert testimony although the source of the witness' expertise is not limited in the formal ways sought to be emphasized by defendants—instead that Rule expressly refers to a witness' expertise acquired by knowledge or experience or training as well. Defendants' cited authorities are wholly inapposite, for they involve witnesses whose areas of testimony fell outside of the scope of whatever expertise those witnesses had. By contrast, Vandewalle long ago acquired a technical background in radios through practical experience in the Navy—and his continued work in computers, together with his continued ability to understand and analyze circui-

try, readily suffice for the kind of opinions described in his report. After all, what is at issue here is the ability to identify and evaluate the software that incorporates electronic circuitry—something that is right at the intersection of Vandewalle's knowhow. Plaintiffs correctly point out that Vandewalle's absence of experience in *designing* scanner radios (a subject that is not at all needed to form the opinions voiced by Vandewalle) is truly irrelevant and in no way precludes him from testifying as to whether the software employed in defendants' radios is such as to include the circuits that plaintiffs designate as their trade secrets.

In sum, Plaintiffs' Mem. 5–6 is entirely accurate when it states:

> Mr. Vandewalle will testify that he is familiar with the alleged trade secrets which consist of specific configurations and connections of transistors, capacitors, resistors, cpu's (processors) and so forth; that these radio circuits cannot be found in the "public knowledge" documents provided by the defendants in response to Interrogatory 5; and that these circuits are found in the defendants' radio drawings. His testimony is not speculative, either; he reviewed drawings, equipment, testimony by the defendants and some of their communications with the plaintiffs. Unlike the arson expert in *Kladouris*, Mr. Vandewalle has looked at and thought about the evidence. Unlike the experts in the defendants' remaining cases, he is not opining that some untested alternative design would have prevented an injury; he is testifying that the defendants used what Mr. Atkinson gave them. He knows what radios are, and how to examine them. He knows what software is and how it is used to control a radio. He has expertise in radios, microprocessors, and software. He is qualified by training and experience to offer his testimony.

Defendants' motion for exclusion of Vandewalle's testimony (Dkt. No. 40–4) is therefore denied—although defendants can of course attempt to discount the *weight* of that testi-

---

**3.** This Court was thereafter assigned to aircraft carrier duty in the South Pacific as a technical radar officer for a nightfighter squadron, during which time it was fortunate enough to invent a refinement in those fighter-mounted radar units that became a permanent part of the Navy's standard equipment for all such sets.

mony through appropriate cross-examination and argument to the jury.[4]

### Plaintiffs' New Claim Against Tandy

█ Until the preparation of the FPTO, plaintiffs had asserted breach of contract and unjust enrichment claims only against GRE. No such claims against Tandy were included in the Amended Complaint. Now, because plaintiffs' trial memorandum that accompanied the proposed FPTO has stated like claims against Tandy for the first time, Tandy has moved to exclude evidence relating to any such claims. In turn plaintiffs' response has explained that any reference on their part to a breach of contract claim against Tandy (which was not a contracting party with plaintiffs) was a typographical error, so that the only matter now at issue is a claim of unjust enrichment.

On that issue defendants have unabashedly adopted a stance that if accepted would have barred their own earlier-rejected effort to inject a new statute of limitations issue into the case at this late hour,[5] while plaintiffs at least acknowledge the apparent inconsistency and seek to distinguish the two situations. There are, to be sure, some differences:

1. For one thing, the Rules contain no waiver-type provisions as to complaints that are comparable to those in Rules 8(c) and 12(b) regarding affirmative defenses. Thus any opposition by defendants to such newly-advanced claims must be based on general equitable (or common law) principles, rather than on anything directly rooted in the Rules.

2. For another thing, the fact that a complaint that has not attached a particular label to a claim (or that has even attached the wrong label) does not foreclose such a claim (see, e.g., *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir.1992)) carries, as a corollary, the principle that the test for viability of any claim is the generous one set out in *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). That being the case, plaintiffs are entitled to point to any implications in the Complaint and Amended Complaint that the claim now sought to be asserted against Tandy is not really new, on the premise that such a claim has been signaled in those earlier pleadings.

But those distinctions do not really help plaintiffs. Such required generosity in reading plaintiffs' prior pleadings is attributable to the Rules' embodiment of a broad concept of notice pleading. And here plaintiffs' Complaint and Amended Complaint can be searched in vain for any allegations that, even with reasonable inferences in plaintiffs' favor, could be stretched enough to put Tandy on notice that it has previously been a target of an unjust enrichment claim. All of plaintiff's allegations in Count IV, which sets out the claim identified under that rubric, point only to GRE. Accordingly Tandy's motion in that regard (Dkt.40–5) is granted.

One point should be added, however. Amended Complaint ¶¶ 19 through 21 charge Tandy as well as GRE with having obtained and derived benefit from plaintiffs' trade secrets. Tandy does not dispute its having been aware that plaintiffs have sought to mulct it in damages for that misappropriation. It is really unclear to this Court how the presentation of that claim would differ from a claim charging unjust enrichment, but it must be understood that today's ruling imposes no limitation on plaintiffs' already-asserted misappropriation claim against Tandy.

### Conclusion

Although the parties' ensuing briefing was both bulky and separate, the Clerk's Office computer printout of "Pending Motions" has grouped all of defendants' motions dealt with in this opinion as part of Dkt. No. 40 because the motions were first identified in a brief two-page listing submitted at the same time as the FPTO. In those terms, defendants' motions described in Dkt. Nos. 40–1 through

---

**4.** Relatedly, this Court rejects defendants' objections as stated in the FPTO to Vandewalle's statement of his qualifications. Those nit-picks are truly nonsubstantive and nonmaterial in nature (something that is also true of the stated objections to plaintiffs' other expert witness Joseph Gemini, which objections are similarly rejected).

**5.** Is sauce for the goose really sauce for the gander?

40–4 are denied, while the motion described in Dkt. No. 40–5 is granted.