**Ron G. McCOY, Plaintiff–Appellant,**

v.

**WGN CONTINENTAL BROADCASTING CO., Defendant–Appellee.**

**No. 90–3693.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1991.

Decided Feb. 26, 1992.

---

Peter R. Meyers (argued), Therese E. Zaller, Meyers & Meyers, Chicago, Ill., for plaintiff-appellant.

Brenda H. Feis, John W. Powers (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

Before CUDAHY and EASTERBROOK, Circuit Judges, and MOODY, District Judge.*

MOODY, District Judge.

The district court granted summary judgment to the defendant in this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. 758 F.Supp. 1231. The plaintiff appeals. 28 U.S.C. § 1291. We affirm.

## I. FACTS

As this case is before us on the district court's summary judgment for defendant WGN Continental Broadcasting Company ("WGN"), we construe the facts as favorably to plaintiff Ron McCoy as the record will permit. *E.g. Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 656 (7th Cir.1991) (en banc).

In 1983, when McCoy was forty-one years old, WGN hired him as a Director of Creative Services for one of its divisions, WGN Television. WGN never disciplined McCoy during his employment in this capacity. He and his department received several performance awards, and McCoy personally received raises and bonuses, though these were not as high as those awarded to his colleagues. He also received good performance evaluations, including one from an outside consultant, and he received praise from his supervisor at WGN, Joe Loughlin. However, Loughlin and Jim Ellis, who was Vice President of Creative Services for WGN's parent

---

\* The Hon. James T. Moody, District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

company, each had serious concerns about McCoy's performance. Loughlin indicated at least once in a personal interview that McCoy was not on the same "wavelength" as himself and might be on the way out as Director of Creative Services.

In 1987, when McCoy was forty-five, Dennis FitzSimons replaced Loughlin. FitzSimons transferred McCoy to the newly created position of Director of Promotions and Publicity. McCoy kept the same salary and benefits, but had substantially less responsibility. WGN hired a person not protected by the ADEA to replace McCoy as Director of Creative Services, paying her substantially more than McCoy had earned.

As Director of Promotions and Publicity, McCoy presented specific proposals, some of which were eventually implemented. Within one month of the transfer, however, a co-worker told McCoy that his new position was not budgeted for the following year. FitzSimons confirmed this fact within four months of the transfer. McCoy subsequently filed an administrative complaint with the Illinois Department of Human Services ("Department"), charging that his transfer was an age based demotion, and that he would be terminated based on his age.

WGN made McCoy's termination official early in 1988, when McCoy was forty-six, and eventually hired an outside consultant and a person not protected by the ADEA to perform some of McCoy's former tasks as Director of Promotions and Publicity. McCoy amended his action with the Department to claim retaliatory discharge. WGN never raised McCoy's performance as an issue in the state proceedings, advancing only financial reasons for transferring and discharging him.[1]

McCoy subsequently brought this ADEA action, claiming both (1) discriminatory demotion and discharge, and (2) retaliatory discharge. WGN moved for summary judgment. After studying McCoy's response, Judge Shadur held a hearing during which he expressed a strong view that summary judgment was inappropriate. After further briefing, however, he granted summary judgment to WGN. McCoy appeals the judgment below only insofar as it rejects his discriminatory demotion and discharge claim, having expressly abandoned his retaliatory discharge claim at oral argument.

## II. ANALYSIS

■ This court performs a *de novo* review of summary judgments in the district courts. *E.g. Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991). This court has recently stated the well settled standard controlling summary judgment as follows:

> In order to uphold a grant of summary judgment, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion," *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990), and conclude there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *First Wisconsin Trust Co. v. Schroud*, 916 F.2d 394, 398 (7th Cir.1990). Summary judgment is only appropriate when the record reveals that no reasonable jury could find for the nonmoving party. *Doe v. Allied–Signal, Inc.*, 925 F.2d 1007, 1008 (7th Cir.1991).

*Karazanos*, 948 F.2d at 335. However, this general standard is applied with added

---

1. The court has no complete record of the Illinois administrative proceedings before it. The court has only the report of a state investigator, McCoy's affidavit, and the assertions of counsel at oral argument to inform it on this matter of fact. The investigator, the McCoy affidavit, and the representations of McCoy's counsel (who asserted that he was present at the state proceedings) indicate that performance was never an issue before the Department. WGN's counsel, however, in response to specific and re-

peated questions of the panel, unequivocally stated at oral argument that WGN did raise performance in that forum. This is no particular problem for the decision of this case. Under settled appellate procedure noted above, we read the record in McCoy's favor.

The court expresses its concern over an apparent misrepresentation by counsel, and notes that it shall forward a transcript of the oral argument in these proceedings to the appropriate disciplinary body for proper fact finding.

rigor in employment discrimination cases, where intent is inevitably the central issue. *E.g. Stumph v. Thomas Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985) (summary judgment "notoriously inappropriate" where intent at issue); *Visser*, 924 F.2d at 660 ("Caution is required in granting summary judgment, especially under a statute that allows for trial by jury, as the age discrimination law does.").

The basic structure of the procedural law controlling ADEA claims is similarly well settled.

> [A] terminated plaintiff's ultimate burden in an age discrimination case is to prove that he was discharged because of his age. The plaintiff need not prove that age was the sole factor motivating the employer's decision, only that age was a determining factor in the sense that he would not have been fired but for the employer's motive to discriminate on the basis of age.

*Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988) (citing *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984)). There are two primary methods of proving age discrimination.

> A plaintiff may prove age discrimination by either of two methods. She may try to meet her burden head on by presenting direct or circumstantial evidence that age was the determining factor in her discharge. Or, as is more common, she may utilize the indirect, burden-shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted to age discrimination claims under the ADEA.

*Oxman*, 846 F.2d at 452.[2] Where a plaintiff can offer no direct, "smoking gun" evidence of age discrimination, the burden-shifting method affords an alternate route to relief.

> The employee must first establish a prima facie case of discrimination. The prima facie case has four elements. The employee must show: (1) he was in the protected class (persons between the ages of 40 and 70), (2) he was doing his job well enough to meet his employer's legitimate expectations, (3) he was discharged or demoted, and (4) the employer sought a replacement for him.

*Karazanos*, 948 F.2d at 335 (citing *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 427 (7th Cir.1989)).

> If the employee is successful, this creates a rebuttable presumption of discrimination, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's discharge. If the employer is successful, the presumption dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext.

*Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 427 (7th Cir.1989) (citations omitted; quoted in *Karazanos*).

Applying this law, McCoy could argue two acts by WGN present a jury question on the issue of discriminatory intent. The first is the transfer within WGN; the second is the discharge from his final position.

---

**2.** In a recent decision, this court analyzed the methods in terms of two potential evidentiary parts each:

> *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), allow a plaintiff to prove age was a determining factor with any of four different types of evidence:
>
> 1) direct evidence that age was a determining factor, such as discriminatory statements uttered by the employer's decision-maker.
>
> 2) circumstantial evidence that age was a determining factor, such as a statistical imbalance in the employer's workforce.

> 3) direct evidence that the employer's proffered justification is pretextual, such as a contradiction between the employer's proffered justification at trial and documentary evidence from the time of the decision.
>
> 4) circumstantial evidence that the employer's proffered justification is pretextual, such as evidence that the proffered justification is not a genuine job requirement.
>
> *Giacoletto v. Amax Zinc Company, Inc.*, 954 F.2d 424, 425–26 (7th Cir.1992) (citing *Perfetti v. The First National Bank of Chicago*, 950 F.2d 449, 450 (7th Cir.1991)).

However, McCoy does not want to strongly differentiate these acts. Rather, he maintains that the transfer and discharge were separate parts of a unitary act of discriminatory discharge—that the newly created position was merely a transition point from which WGN could fire him without eliminating a position integral to its normal operating structure. *See Russell v. Keyes Fibre Co.,* 771 F.Supp. 951, 954 (N.D.Ind. 1991) (modifying prima facie case to account for possibility of sham transfer on summary judgment motion); *Stratton v. Handy Button Machine Co.,* 639 F.Supp. 425, 433 (N.D.Ill.1986) (declining on summary judgment to choose between inference of sham job and inference of attempt to rehabilitate employee).

McCoy's brief concedes there is no direct, "smoking gun" evidence of age discrimination to support his claim.[3] Nor is there any statistical evidence. Accordingly, he must proceed under the burden shifting method of proof and hope for an inference of discriminatory intent to arise from his prima facie case and his attack on WGN's reasons for firing him.

The district court held that McCoy failed to satisfy the second and third elements of the prima facie case. That is, the district court found that McCoy had not produced sufficient evidence to show a genuine issue as to whether he had performed his jobs satisfactorily or whether his transfer within WGN was a demotion. This court, however, concludes that the crux of the matter is the pretext inquiry at the end of the burden-shifting procedure. Accordingly, the court will assume, *arguendo,* that McCoy has satisfied the elements of his prima facie case with reference to both the transfer and the discharge.

To establish pretext, an employee must ultimately show by a preponderance of the evidence either "(1) that the employer was more likely motivated by a discrimi-

natory reason, or (2) that the employer's proffered reason is unworthy of credence." *Karazanos,* at 336 (citing *Johnson v. University of Wisconsin–Milwaukee,* 783 F.2d 59, 63 (7th Cir.1986)). Where, as here, the plaintiff attempts to show the employer's proffered rationale is incredible, he need not present *any* direct evidence of discrimination. *La Montagne,* 750 F.2d at 1409–10. As this court has explained, a plaintiff may simply attack the credibility of the employer's proffered reason for termination:

> [A] showing that a proffered justification is pretextual may itself be equivalent to a finding that the employer intentionally discriminated. In other words, if a plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent.

*Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 18 (7th Cir.1987), *overruled on other grounds,* 860 F.2d 834 (7th Cir.1988). *See also Ayala v. Mayfair Molded Products Corp.,* 831 F.2d 1314, 1319 (7th Cir. 1987). The Supreme Court has provided similar guidance, explaining that "there may be some cases where the plaintiff's initial [prima facie] evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). As the Supreme Court had previously explained in another employment discrimination context: "[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally as-

---

**3.** Appellant Br. at 10. Nevertheless, counsel at oral argument seemed intent on constructing smoking gun evidence out of Loughlin's criticizing McCoy for not being on his "wavelength." The theory here relies on a posited youthful quality to the word "wavelength." Even making the dubious assumption that this term borrowed

from the physical sciences is now associated significantly with the class not protected by the ADEA, this court is not persuaded that a reasonable jury could properly find that this word, by itself, bears any pejorative message toward the class that is.

sume acts only with *some* reason, based his decision on an impermissible consideration such as race." *Furnco Const. Co. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978) (emphasis original).

■ In this case, McCoy argues that WGN's stated reasons for transferring and eventually sacking him are so implausible that they must be pretextual. Specifically, he advances at least four points designed to show pretext: (1) he performed well, so performance was not a plausible reason to move or fire him, (2) WGN never argued performance in the state administrative proceedings, so performance is an implausible reason for his transfer and termination when offered later in federal court, (3) WGN hired a more expensive employee to replace him as Director of Creative Services and replaced him as Director of Promotions and Publicity, so budgetary concerns are not a plausible reason for moving and firing him, and (4) the decision to eliminate his final job came so quickly after his transfer that it is implausible to suggest WGN wanted to give him a chance there.

Thus, our inquiry is whether the defendant's offered reasons for transferring and firing plaintiff are genuinely open to attack at trial on the ground that they allow an inference of age discrimination. McCoy presents a close case, especially in light of the rules controlling summary judgment. Ultimately, however, this court concludes that his efforts to ward off summary judgment by showing pretext bear more on the issue of mistake on WGN's part than on the issue of whether WGN honestly believed in the reasons it has offered for its actions.

■ In *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988), this court surveyed its cases and provided useful guidance on the distinction between mistakes and legally significant pretexts. [W]e do "not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986). "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter

how mistaken the firm's managers, [the ADEA does] not interfere." *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987). Rather, our inquiry is limited to "whether the employer gave an honest explanation of its behavior." *Id.*

Thus, the issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers. *Visser*, 924 F.2d at 658–59 (even firing for unethical reason is not evidence of age discrimination).

WGN maintains that the transfer was meant to salvage McCoy's career, that it was the alternative to firing him outright. Acting on their performance concerns, WGN says, the company moved him, and then found that it could not afford to maintain his new role because of financial pressures and continued performance concerns. So, they fired him like they hired him— without reference to his age. McCoy's points against giving credence to this reasoning are not telling enough to go before a jury.

Turning to performance first, it is undisputed that WGN had some level of concern with McCoy's performance and had warned him through Loughlin of a possible move. Whether or not that level of concern was justified given McCoy's actual performance is irrelevant. Even if the performance concern was a complete mistake, even if McCoy was the best possible person for the job, so long as WGN honestly believed he was not, its business judgment will not be second-guessed by federal courts applying the ADEA.

■ As for WGN's failure to advocate for itself in terms of performance before a state administrative tribunal, here is some evidence that performance was not honestly WGN's motive. However, this court is reluctant to give substantial weight to a position taken in adversary proceedings before the Department. Myriad factors undoubtedly influence the positions taken in such a forum, as opposed to federal court, including the opportunity and incentives

for discovery and thorough internal investigation. This court declines to bind ADEA defendants to the positions they initially assert in state administrative proceedings by rendering any different position a *per se* pretext for summary judgment purposes in subsequent proceedings.

WGN's decision to replace McCoy as Director of Creative Services with a more expensive employee strikes a glancing blow at the financial reason asserted for WGN's conduct. But the primary reason asserted by WGN for shifting McCoy out of that position was performance. McCoy brings a little more strength to bear when he attacks the financial sense of replacing him as Director of Promotions and Publicity. But, again, McCoy is only attacking the business judgment of his employer. Even if WGN was wrong in thinking it could save or make money firing McCoy, even assuming that the replacements were not more cost-effective, that merely posits an error on WGN's part. This court does not sit to correct such errors.

Finally, and similarly, McCoy's attack on WGN's quick decision to oust him as Director of Promotions and Publicity does not amount to more than another allegation of error. That WGN may have been mistaken in attempting to rehabilitate McCoy does not afford a basis for ADEA relief. Even if WGN should have known that McCoy would not work out in his new post for either performance or financial reasons, the ADEA provides no remedy for the mistake.

### III. CONCLUSION

The points McCoy has argued do not lead this court to question WGN's honest belief in its asserted rationale for handling him as it did, nor would they lead a reasonable jury to do so. Accordingly, the judgment of the district court is AFFIRMED.