**Robert WOLD, Plaintiff,**

v.

**FELLOWS CORPORATION, Defendant.**

No. 96 C 1581.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 11, 1997.

Vicki Lafer Abrahamson of Abrahamson Vorachek & Mikva, Chicago, IL for Plaintiff.

Wendy L. Nutt of Brittain Sledz Morris & Slovak, Chcago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Robert Wold ("Wold") charges his former employer Fellows Corporation ("Fellows") with age discrimination in violation of the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. § 623(a)). Fellows has moved for summary judgment under Fed. R.Civ.P. ("Rule") 56, both sides have complied with this District Court's General Rule ("GR") 12(M) and 12(N)[1] and the motion is fully briefed and ready for decision. For the reasons stated in this memorandum opinion and order, Fellows' motion is denied and this action will proceed to trial.

### Summary Judgment Standards

Familiar Rule 56 principles impose on Fellows the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the nonmoving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997)). While "this general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue" (*McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370–71 (7th Cir.1992)), that does not negate the potential for summary judgment in cases where a movant plainly satisfies the Rule 56 standards (*Washington v. Lake County*, 969 F.2d 250, 254 (7th Cir.1992)). In those terms summary judgment is appropriate if the record reveals that no reasonable jury could conclude that Wold was treated in a statutorily prohibited discriminatory fashion (see *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir.1996) and cases cited there).

As with every summary judgment motion, this opinion accepts nonmovant Wold's version of any disputed facts. Though the following factual account is culled from both parties' submissions to present a total picture, any differences between the two are resolved in Wold's favor.[2] Other relevant facts, which fit somewhat better into the substantive legal discussion, will be set out later in this opinion.

### Facts

Fellows, one of four companies in the Vermont USA Machine Tool Group ("Vermont USA"), is engaged in the business of manufacturing and rebuilding gear shaper machines and related equipment (W.12(N) ¶ 3). In May 1991 Wold, then 54 years old, was hired by Tom Hatfield ("Hatfield") as one of Fellows' four Regional Sales Managers ("Managers") (*id.* ¶ 2; W.12(N) Supp. ¶ 1).[3] In that capacity Wold was responsible for selling new and rebuilt gear shaper machines, replacement parts and cutting tools (W.12(N) Supp. ¶ 2).

Upon Hatfield's retirement, Wold began reporting to Fellows' Vice President of Sales and Marketing Carl Johnson ("Johnson") (W.12(N) ¶ 14). Johnson required each Manager to submit a weekly report detailing sales activities and monthly forecasts of projected sales (*id.* ¶ 16). Fellows used those sales forecasts to make purchasing and manufacturing decisions, though the estimates

---

**1.** GR 12(M) and (N), which require record references to support the parties' respective factual assertions, are designed to facilitate the resolution of Rule 56 motions by highlighting the existence or nonexistence of factual disputes.

**2.** This opinion therefore focuses primarily on Wold's GR 12(N) responses and his own Statement of Uncontested Facts (respectively cited "W.12(N) ¶ __," and "W.12(N) Supp. ¶ __").One important caveat: Because nonmovant Wold's statements of facts or his responses to Fellows' statement are to be credited only if they are supported by the corresponding record citations, this Court will not accept any unsupported statements or mischaracterizations of the record.

**3.** Wold's territory comprised Illinois, Wisconsin, Minnesota, Iowa, Nebraska, North Dakota and South Dakota (W.12(N) ¶ 4).

were tempered (that is, edited) by Johnson before the company relied on them (*id.* ¶ 21).

On May 23, 1995 Fellows hired Richard Trudell ("Trudell") as Group Vice President of Sales and Marketing for the four Vermont USA divisions (*id.* ¶ 25). Within the new organizational hierarchy, Johnson reported directly to Trudell, who in turn reported to Vermont USA's President and General Manager Richard Crossman ("Crossman") (*id.* ¶¶ 26–27). Soon after joining Fellows, Trudell began to receive assessments about the job performance of the four Managers. Though Wold challenges their veracity, those reports indicated that Wold suffered from various performance deficiencies (*id.* ¶¶ 29, 33).

One month later Trudell and Wold held their first meeting to conduct a formal performance review (*id.* ¶¶ 40, 43). Johnson and Trudell testified to having concerns about Wold's performance at that time (*id.* ¶ 44), but Wold testified that no one at the company ever (either at that meeting or earlier) discussed his alleged performance deficiencies with him (W.12(N) Supp. ¶¶ 21–23). Wold does admit that Trudell informed him at the meeting that his June sales forecast was overly optimistic, at which point Wold agreed to revise it (*id.* ¶ 40). Trudell testified that he was satisfied with Wold's revisions (Trudell Tr. 175).

After that initial meeting Trudell and Johnson accompanied Wold on a sales call to a client. Though they describe Wold as an inactive participant at the meeting (W.12(N) ¶¶ 48–50), Wold denies that passive characterization (*id.*). To support that denial, Wold notes that Johnson's diary contains no notations about his allegedly deficient performance on that date (W.12(N) Supp. ¶ 55).

After that encounter Trudell voiced his concerns about Wold's performance to Johnson and recommended that Wold be removed from his Manager's position (W.12(N) ¶ 51).[4] Although Wold disputes these claimed deficiencies, Trudell cited Wold's failure to direct the meeting with the client, his insufficient responses to Trudell's general questions, his inaccurate sales forecasts and his lack of motivation (*id.* ¶¶ 52, 58). In any event, Fellows' version is that Johnson concurred in Trudell's recommendation, and Crossman then approved the termination (*id.* ¶ 57).[5]

On August 21, 1995 Johnson informed Wold, then 58 years old, that he was fired from his Manager's position effective September 1 (*id.* ¶ 66). Wold says that Johnson offered three reasons for the termination: (1) lackluster sales, (2) inadequate forecasting and (3) "because Dick Trudell wants a young guy with fire coming out of his ass" (*id.* ¶ 67). Johnson then offered Wold a demotion to an in-house sales engineer's position (*id.* ¶ 68). That position paid only about half of what Wold had earned as a Manager and would have required Wold to relocate his family to Vermont (W.12(N) Supp. ¶¶ 66, 68). Wold was given just two days to consider the offer (*id.* ¶ 67), and he rejected it (W.12(N) ¶ 73). Fellows hired Richard Reenan ("Reenan") as a 44–year–old replacement Manager for the substantially older Wold (*id.* ¶ 74).[6]

On January 19, 1996 Wold filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). On February 20 EEOC issued Wold a right-to-sue letter, whereupon Wold timely filed his complaint here (Complaint ¶¶ 5–6).

### ADEA Claim

To prevail on his ADEA claim, Wold must establish[7] that his termination would not

---

4. Trudell asserts that he did not make the termination decision at that time, but rather simply considered recommending that Wold be discharged (F.12(M) ¶¶ 51–53). According to Trudell, his actual firing recommendation was made later, in August 1995 (*id.* ¶ 57). As indicated earlier, Wold's different assertion is credited here.

5. Wold contends that Trudell alone decided to discharge him (W.12(N) Supp. ¶ 78), but that distinction makes no difference in the result—

either way Trudell was an integral decisionmaker.

6. One year later Reenan voluntarily resigned from Fellows to pursue other opportunities (*id.* ¶ 80).

7. At this stage, of course, Wold need not "establish" or "prove" anything. Instead he has the substantially lesser burden under Rule 56 of demonstrating the existence of a genuine issue of material fact. To avoid the need for constant

have occurred "but for" Fellows' motive to discriminate against him because of his age (*O'Connor v. DePaul Univ.*, 123 F.3d 665, 669 (7th Cir.1997)). *Weisbrot v. Medical College of Wis.*, 79 F.3d 677, 680–81 (7th Cir.1996) has set out two "distinct evidentiary paths" (*Kormoczy v. Secretary Dept. of Housing Urban Dev.*, 53 F.3d 821, 824 (7th Cir.1995)) to reach that destination:

> An ADEA plaintiff may establish age discrimination in one of two ways. She may present direct or circumstantial evidence that age was the determining factor in the adverse employment action, or she may invoke the burdenshifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to create an inference of age discrimination.

To reframe those alternatives in the less demanding Rule 56 terms, one available route enables Wold to survive summary judgment if he can produce evidence to support a finding of discriminatory intent (the so-called direct method), while on the second route Wold can stave off summary judgment if he can adduce evidence that could potentially outvolley Fellows in the familiar *McDonnell Douglas* ping-pong match (the so-called indirect method). As *Fuka*, 82 F.3d at 1402–03 puts it:

> Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of age discrimination may be drawn.

In this case Wold has chosen both paths, so this opinion will initially address the first (which turns out to obviate any need to apply the second).

### 1. "Direct" Method [8]

To avert summary judgment via the first path, Wold must produce sufficient evidence to permit a reasonable jury to conclude that

he was terminated because of his age. *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997) has recently reconfirmed two ways to sustain that evidentiary burden:

> Under the direct proof method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination.

■ Because employers are generally not so accommodating as to memorialize their discriminatory animus in writing or to speak it aloud, most commonly a plaintiff must rely on circumstantial evidence in the hope of providing "a basis for drawing an inference of intentional discrimination" (*Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). But here Wold proffers proof in the form of the rare "smoking gun" direct evidence—"evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents" (*id.*)—that Fellows intentionally and impermissibly took his age into account (indeed, may really have been motivated by his age alone) in deciding to fire him.

On that score Wold points to the conversation in which he received his termination notice. As already stated earlier, Wold quotes Johnson's statement, in outlining the reasons for his discharge, that "Dick Trudell wants a young guy with fire coming out of his ass" (W.12(N) ¶83). Although Fellows identifies some reasons why a trier of fact might find that suspect, and although Johnson denies making that statement, Wold's sworn testimony must be accepted as true at this point.

■ To sustain a claim that an employee's termination was motivated by anti-age animus, a proffer of direct evidence "must not

---

repetition of that lengthier and more awkward locution, and to be faithful in quoting the case law, this opinion will frequently use the more demanding language. But of course this Court consistently adheres to and applies the lesser Rule 56 burden.

**8.** "Direct" is placed in quotes here (though not always later) to signal the confusion that is frequently engendered by the dual role played by

the word "direct" in this area of the law. Though it is quite understandable for the case law to frame the contrast to the "indirect" burden-shifting analysis of *McDonnell Douglas* by employing the term "direct," the fact is that a plaintiff can pursue the "direct" course by producing either direct or circumstantial evidence of intentional discrimination (see *Kormoczy*, 53 F.3d at 824).

only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question" (*Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 443 (7th Cir.1997), quoting *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir.1989)). Here Johnson's statement satisfies both those requirements.

As to the first, Johnson's remark is probative of Fellows' discriminatory intent. Fellows R. Mem. 5 urges that the disputed comment was simply "that of a subordinate employee, who was speculating about and characterizing Trudell's motivations." Were that unquestionably so, Fellows could invoke the principle that "[s]tatements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker are irrelevant to [the analysis]" (*Chiaramonte v. Fashion Bed Group, Inc.*, No. 96–2987, 1997 WL 695383, at *4 (7th Cir. Nov. 4, 1997)). But that is not an apt characterization here. Instead the record reflects that Trudell discussed the proposed termination with Johnson, Wold's immediate supervisor, before its implementation (F.12(M) ¶¶ 51, 57–62). It is surely reasonable to infer, in resolving Fellows' summary judgment motion, that Johnson was reporting Trudell's *stated* discriminatory intent rather than just reading his mind (accord, such cases as *Emmel v. Coca Cola Bottling Co.*, 95 F.3d 627, 630–32 (7th Cir.1996) and *Siwik v. Marshall Field & Co.*, 945 F.Supp. 1158, 1163 (N.D.Ill.1996)).

■ Of course a comment reflecting age animus does not by itself constitute direct evidence of age discrimination (see *Hong (Young In) v. Children's Memorial Hosp.*, 993 F.2d 1257, 1265–66 (7th Cir.1993)). As explained in Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 1804, 104 L.Ed.2d 268 (1989)[9]:

> Thus, stray remarks in the work place...cannot justify requiring the employer to prove that its...decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or state-

ments by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.

But Johnson's report of Trudell's goal was no "stray remark," for it related directly to Fellows' decision to discharge Wold (see *Fuka*, 82 F.3d at 1403). Unlike a random slur that does not reflect the thinking of the individuals with decisionmaking authority (see *Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir.1990)), the age-based comment here was attributed to someone high in the decisionmaking process by another participant in that process. And of course the statement was contemporaneous with Wold's termination (see *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir.1996), stating that such "comments must be contemporaneous with the discharge or causally related to the discharge decision making process"). In the context of the very conversation in which Wold's immediate supervisor Johnson told him that he was fired, the statement may fairly be viewed as the rare "smoking gun" direct evidence from which a reasonable jury could conclude that Wold's termination was discriminatorily motivated.

■ Fellows also contends that the disputed comment is inadmissible hearsay. Consistently with the requirement of Rule 56(e), *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 368 n. 1 (7th Cir.1997)(internal quotation marks and citation omitted) has recently reconfirmed:

> It is well established that a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment.

But here the proffered evidence is nonhearsay. Though it may be characterized as reporting an out-of-court statement offered to prove the truth of the matter asserted, that very characterization places it comfortably within the definition of nonhearsay under Fed.R.Evid. 801(d)(2)(D)—and hence confirms its admissibility. And as stated earlier, a factfinder could reasonably treat Johnson's statement as a report of a statement made by Trudell—and *that* statement

---

9. Because the *Price Waterhouse* four-Justice plurality required a fifth vote to create a majority, the concurring opinions of Justices O'Connor and White (essentially identical in approach) have uniformly been regarded as important reflections of the decision of the Supreme Court as such.

would also be nonhearsay (and hence admissible) for the same reason.

To be sure, Wold's version of events recounts Johnson as stating two reasons in addition to the tainted age-based motivation for the termination decision. But a factfinder, even if it were to credit those other factors too (which would then create the mixed-motives environment dealt with in *Price Waterhouse*[10]), could reasonably view Fellows as having failed to carry its burden of "proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's [age] into account" (490 U.S. at 258, 109 S.Ct. at 1794 (plurality opinion, joined in by Justices White and O'Connor—see n. 9 to this opinion)). As observed in *Adler v. Madigan*, 939 F.2d 476, 479 (7th Cir.1991), " '[m]ixed motives' situations are ordinarily not grist for the summary judgment mill" because such cases typically involve fact-intensive and credibility-intensive questions of motive and intent. That is certainly true here.

### 2. *Indirect Method*

Because the direct evidence has been adequate to stave off summary judgment, there is no need to pursue the *McDonnell Douglas* burden-shifting analysis at all. As *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) explains:

> [T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.

Accord, *Randle*, 876 F.2d at 569.

### *Conclusion*

Wold has provided enough evidence of age animus in Fellows' decision to terminate his employment to avoid summary judgment. At a minimum a genuine issue of material fact exists as to whether Wold would have been discharged but for his age. Hence Fellows' Rule 56 motion is denied, and the case will proceed to trial. This Court sets a status hearing at 9:15 a.m. December 22,

1997, at which time counsel for the parties should come prepared to establish the necessary procedures leading to trial.

---

10. Although *Price Waterhouse* was a Title VII case, this opinion follows our Court of Appeals' lead (see *Doll v. Brown*, 75 F.3d 1200, 1203 (7th Cir.1996)) in assuming, without having to decide, that the *Price Waterhouse* approach also applies in the ADEA context.