**Caroline SPEROPOULOS, Plaintiff,**

v.

**JEWEL FOOD STORES, INC., Defendant.**

No. 98 C 928.

United States District Court, N.D. Illinois, Eastern Division.

March 10, 1999.

Marian Henriqeuz Neudel, Chicago, IL, for plaintiff.

Patricia Costello Slovak and Kevin Dunphy of Brittain Sledz Morris & Slovak, Chicago, IL, for defendant.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

Caroline Speropoulos ("Speropoulos") has charged her former employer Jewel Food Stores, Inc. ("Jewel") with employment discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII," 42 U.S.C. §§ 2000e to 2000e–17), assertedly stemming from her interracial nonmarital relationship with Jewel employee Jesse Knight ("Knight"). Speropoulos is Caucasian and Knight is African–American.

Jewel has filed a Fed.R.Civ.P. ("Rule") 56 summary judgment motion and has complied with this District Court's General Rule ("GR") 12(M).[1] Although Speropoulos re-

---

**1.** GR 12(M) and (N) are designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to Jewel's GR 12(M) statement as "J. 12(M) ¶ __" and to

sponded to Jewel's GR 12(M) statement of facts, she did not provide a separate statement of additional facts as GR 12(N) directs. Instead she included various additional factual allegations in the body of her memorandum of law. Despite such noncompliance on Speropoulos' part, this Court will consider the facts set out in her response.[2] For the reasons stated in this memorandum opinion and order, Jewel's motion is denied and this action will proceed to trial.

### Summary Judgment Standards

Familiar Rule 56 principles impose on Jewel the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997)). While "this general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue" (*McCoy v. WGN Continental Broad. Co.*, 957 F.2d 368, 370–71 (7th Cir.1992)), that does not negate the potential for summary judgment in cases where a movant plainly satisfies the Rule 56 standards (*Washington v. Lake County*, 969 F.2d 250, 254 (7th Cir. 1992)). In those terms summary judgment is appropriate only if the record reveals that no reasonable jury could conclude that Speropoulos was treated in a statutorily prohibited discriminatory fashion (see *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir.1996) and cases cited there).

As with every summary judgment motion, this Court accepts nonmovant Speropoulos' version of any disputed facts. What follows in the *Facts* section is culled from the parties' submissions, with any differences be-

tween them resolved in Speropoulos' favor. Other relevant facts derived in the same manner, but which fit somewhat better into the substantive legal discussion, will be set out later in this opinion.

### Facts

Speropoulos began working at the Jewel Bakery in Melrose Park, Illinois on November 6, 1996 (J. 12(M) ¶ 1). Before she was hired Speropoulos filled out an application for employment on which she checked a box stating she had no "relatives" who worked for Jewel (J. Ex. 10). No definition of "relatives" is provided on the form, nor was one given to Speropoulos during the application process (S.Aff.¶ 2A).

Bakery superintendent Wavon Morgan ("Morgan") was approached later that same month by bakery employee Bill Heger ("Heger") and asked why Speropoulos was allowed to work there, given that she lived with bakery employee Knight (J. 12(M) ¶¶ 4, 6–7). Heger had asked that Jewel hire his live-in girlfriend on several occasions, but Morgan had told him he believed that hiring a current employee's live-in girlfriend was against Jewel's anti-nepotism policy (*id.* ¶¶ 8–9).

It must be noted that Jewel has previously hired employees who had relatives working in the same Jewel facility. For example, Morgan Dep. 20–22, 47–49 listed several examples of such related employees, including a mother-daughter and a married couple. However, Morgan testified that any bakery employee who also had a family member working in the bakery had been hired before Morgan became plant superintendent. To the best of his knowledge, no further family member hires were made while he was superintendent (J. 12(M) ¶¶ 53–54).

After receiving the tip from Heger, Morgan began to investigate Speropoulos' appli-

---

Speropoulos' GR 12(N) response as "S. 12(N) ¶ __."

**2.** Myriad Seventh Circuit opinions support the authority of a district court to enforce the strictures of GR 12(M) and 12(N) to the letter—see, e.g., *Dade v. Sherwin–Williams Co.*, 128 F.3d 1135, 1139–40 (7th Cir.1997) and cases cited there. But this is not one of the egregious situa-

tions in which a responding party's noncompliance forces an unwarranted and burdensome judicial hunt through the record to ascertain whether there are indeed genuine issues of material fact. Under these circumstances, this Court is not compelled to penalize injured party Speropoulos for her lawyer's flawed workmanship.

cation. According to Morgan, when first asked if she was living with Knight, Speropoulos denied even knowing him (*id.* ¶ 15). Speropoulos Aff. ¶ 14, however, swears that she never denied the existence of a relationship with Knight, but she did deny repeatedly that he was a "relative." It is uncontroverted that Speropoulos was living with Knight at the time of her application and during her employment with Jewel (in fact, she had been living with him for over 20 years, and they had a child together) (J. 12(M) ¶ 16, S. Aff. ¶ 9). It is also uncontroverted that Speropoulos failed to disclose her relationship with Knight either on her employment application or during any of her pre-employment interviews (J. 12(M) ¶¶ 18–19).

Morgan testified that after Speropoulos denied knowing Knight, he checked the personnel files and learned that the two employees had the same home address (*id.* ¶ 20). On November 20, 1996 Morgan confronted Speropoulos with that fact, and according to Morgan (but *not* according to Speropoulos) she again denied that she had known Knight before coming to work for Jewel (*id.* ¶¶ 21–22). At some point (from the very beginning if Speropoulos is to be believed, as Rule 56 requires, or only after further questioning according to Morgan [3]) Speropoulos said that she and Knight had cohabited for at least 20 years and had one child (J. 12(M) ¶ 23, S. Aff. ¶ 14).

Morgan consulted with his supervisor James Gardeck ("Gardeck") and advised him that there were possible discrepancies in Speropoulos' application. Gardeck told Morgan to talk with Jewel's Human Resources people, so Morgan called Human Resources Manager Cheryl Nolan ("Nolan"). He explained the situation and asked Nolan if Speropoulos' relationship had any legal standing that should have been disclosed on her application (*id.* ¶¶ 24–27).

Nolan then called Labor Relations Manager Anthony Bowden ("Bowden") and recounted the facts without revealing the names or races of the persons involved (*id.* ¶¶ 28, 32). Bowden, who is not an attorney, stated that a common law marriage existed under those facts (*id.* ¶ 33).[4] Bowden did not consult with Jewel's legal department about the issue (Bowden Dep. 9–10). Nolan and Bowden concluded that Speropoulos had falsified her application by failing to disclose Knight as a relative, and Nolan relayed that conclusion to Morgan. Morgan, Nolan and Gardeck then agreed that Speropoulos was subject to termination for falsifying her application (J. 12(M) ¶ 38).[5] Jewel has terminated at least one other employee at the Melrose Park complex for falsifying an employment application (*id.* ¶ 39).[6]

On November 29, 1996 Morgan and bakery supervisor Aristotle Chagares ("Chagares") met with Speropoulos. They told her that her failure to disclose Jesse Knight as a relative constituted falsification of her employment application. Speropoulos was given an opportunity to resign, but she refused and was then terminated (*id.* ¶ 40). Speropoulos Aff. ¶ 13 says that she had already

---

3. Significantly for this opinion's later analysis, Jewel's memos documenting Speropoulos' termination list only her answer on the employment application, and not her alleged lies during those meetings, as the sole reason for her discharge (J. Exs. A to C).

4. Bowden based his conclusion on his experience in Ohio, which recognizes common law marriage (Ohio Revised Code § 3105.12 (1998)). Illinois, of course, does not (see, e.g., *Hewitt v. Hewitt,* 77 Ill.2d 49, 62–63, 31 Ill.Dec. 827, 394 N.E.2d 1204, 1209–10 (1979), reconfirming this State's legislative abolition of that common law institution near the turn of the century—in 1905).

5. Jewel's Application for Employment (J. Ex. 10) requires applicants to sign the following statement:

> I certify that the information given on this application is true and complete and understand that any false or misleading information given or the omission of any pertinent information, may be considered as sufficient reason for my discharge if I am hired.

6. In fact, Speropoulos has no evidence that any person was permitted to remain employed at Jewel after failing to disclose, on his or her employment application, a pre-existing long-standing relationship with another Jewel employee (J. 12(M) ¶ 55). On the other side of the coin, Jewel has proffered no evidence that it has ever terminated anyone else because of the existence of a comparable relationship.

informed them that Illinois does not recognize common-law marriage, but that their decision to fire her was unaffected.

Gardeck, Chagares, Morgan and Nolan all testified that Speropoulos was terminated for falsification of her employment application, and her personnel file records reflect the same (*id.* ¶¶ 44–48). Morgan testified further that Speropoulos' race was never an issue in her termination (*id.* ¶ 51). Speropoulos' failure to disclose her relationship with Knight on her employment application and the fact that her hiring violated Jewel's anti-nepotism policy were the only reasons ever given by any Jewel officer or agent for her termination (*id.* ¶ 49). Speropoulos never heard any member of Jewel management discuss her race or Knight's race during her employment with Jewel (*id.* ¶ 50), but her Aff. ¶ 15 states that she was the only white Jewel employee in a relationship with an African–American and that Jewel employees "maintained a pattern of informal racial segregation" in the lunchroom and other social situations.

### Substantive Legal Standards

Although without explicitly stating that interracial relationships are protected by Title VII, *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188 (7th Cir.1992) upheld a district court finding that an employer had violated the statute by an adverse employment decision based on its employees' interracial relationship. Some other Courts of Appeals have expressly found persons in such relationships to be within Title VII's protection (see *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.*, 156 F.3d 581, 588–89 (5th Cir.1998) and cases cited there). Jewel does not argue that Speropoulos does not come under Title VII's mantle, and this Court sees no reason to find that she is not thus protected. This opinion therefore turns to the more difficult issue: whether Speropoulos' claim can withstand Jewel's motion for summary judgment.

*Mojica v. Gannett Co.*, 7 F.3d 552, 561 (7th Cir.1993) (en banc) (most citations omitted) has succinctly set out Speropoulos' burden on her Title VII claim against Jewel:

In any discrimination case, the plaintiff bears the ultimate burden to prove, by a preponderance of the evidence, that his employment was adversely affected by his protected class status. The plaintiff can meet this burden either by presenting direct evidence of discrimination or by successfully navigating the course of shifting burdens authorized in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Because Speropoulos has offered no "smoking gun" or circumstantial evidence that on its face creates a reasonable inference of unlawful discrimination (see *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736–37 (7th Cir.1994), describing three types of such evidence), she—like most plaintiffs asserting discrimination—has no choice but to attempt to create a presumption of such discrimination via the *McDonnell Douglas* methodology (*Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 522 (7th Cir.1994)).

There is no need to rehearse the often-repeated steps entailed in that process. Indeed, there is no need actually to follow those steps in this case—as this Court (like others) has noted more than once (e.g., *Moore v. NutraSweet Co.*, 836 F.Supp. 1387, 1395 (N.D.Ill.1993) (citations and internal quotation marks omitted)):

[T]he plaintiff's prima facie showing in these cases frequently cannot be analyzed wholly discretely from the plaintiff's showing of pretext, so that it is preferable to collapse the inquiry and focus on the showing of pretext, a position that our Court of Appeals also has taken on occasion (see, e.g., its decision affirming this Court in *McCoy* [*v. WGN Continental Broadcasting Co.*], 957 F.2d [368,] 372 [ (7th Cir.1992) ]).

Here too the absence of any relevant comparison to any Jewel employees who were not involved in an interracial relationship makes it more sensible to cut directly to the ultimate chase. So, as in such cases as *McCoy*, this opinion focuses on whether Speropoulos has met her burden of creating a reasonable inference that Jewel's stated reason for dismissing her was a pretext for race-based discrimination.

*Pretext*

*McCoy,* 957 F.2d at 372 (quotation marks and citations omitted) sets out Speropoulos' burden on the issue of pretext:

> To establish pretext, an employee must ultimately show by a preponderance of the evidence either (1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence. Where, as here, the plaintiff attempts to show the employer's proffered rationale is incredible, [s]he need not present any direct evidence of discrimination. As this court has explained, a plaintiff may simply attack the credibility of the employer's proffered reason for termination.

Speropoulos offers several facts that undermine Jewel's proffered reason for her discharge and that could well convince a reasonable jury that Jewel's explanation is a pretext for discrimination.

To begin with, although all of the Jewel documents relating to Speropoulos' termination list only the purported falsification of her employment application as the reason for her discharge, the later-created J. 12(M) ¶ 49 says that the fact that "her hiring violated Jewel's anti-nepotism policy" was a factor in her discharge. But as Jewel admitted, that policy is certainly not iron-clad, and several current employees are related by blood or marriage (this Court will assume that none of those relationships are interracial, else Jewel would surely have included such information in its submissions here). That evidence— importantly something that a reasonable factfinder could view as a manufactured after-the-fact attempt to justify the discharge on a basis that was not identified when the decision was actually made—casts the first shadow of doubt on Jewel's honesty.

Additionally, Jewel claims to have fired Speropoulos for lying on her application when in fact she did not lie. Because she and Knight are not "relatives," [7] there was no place on the application that called for her to disclose their relationship. Although she and Knight have lived together for a long time, they are not married—and as Jewel admits (as it must), Illinois does not recognize common law marriage.

Jewel maintains that although it was admittedly mistaken about the dishonesty of Speropoulos' application answer, it fired her because it believed she lied and not because of her interracial relationship. In that respect, as stated in such cases as *Kralman v. Illinois Dep't of Veterans' Affairs,* 23 F.3d 150, 157 (7th Cir.1994) even if the employer's "decision would fall into the area of an honest mistake or a bad business judgment on [its] part, it does not prove that the [employer's] proffered reason is a pretext." In short, Speropoulos must challenge not the wisdom but the honesty of Jewel's actions (*id.* at 156).

But Jewel's honest and good faith belief that Speropoulos lied on her application is exactly what Speropoulos' additional evidence places in issue. First and perhaps most significantly, her Aff. ¶ 13 says that she specifically told Morgan during one of their discussions that Illinois does not recognize common law marriage.[8] That of course negates any falsehood on Speropoulos' part—but more importantly, it could reasonably be viewed by a factfinder as negating the truthfulness of Jewel's claim that its decision was really based on a mistaken notion that had already been identified to it as mistaken. In other words, what could certainly have been an honest mistake attributable to Bowden's ignorance of Illinois law to begin with (see n. 4) could well be viewed in a totally different

---

7. It is not mere semantics to say that people who have a sexual "relationship" outside of marriage are not "relatives" in any ordinary sense of that term.

8. J. Reply ¶ 7 denies that Speropoulos made such a statement, pointing to memoranda by Morgan (J. 12(M) Ex. 11(B)) and Larry Chagares (*id.* Ex. 11(C)) to support that denial. There are two problems with that:

1. Though the memoranda are business records that bring them within the exception to the hearsay rule, neither really says that Speropoulos did not make the claimed statement— both are wholly silent on the matter.

2. Even were that not so, Rule 56 mandates the crediting of nonmovant Speropoulos' version.

light once Speropoulos had set the matter right (before Morgan and Chagares had implemented the decision to fire her). And that could in turn create the reasonable inference that Jewel was actually firing Speropoulos for another unstated and statutorily impermissible reason.

Second, Speropoulos Aff. ¶ 12 swears:

That Plaintiff asked Morgan whether the proposed discharge was a result of her being the only white woman who was "going with a black guy." Morgan then looked down at his desk, and then said, "You know, Ms. Speropoulos, I'm retiring in January." She asked him "What does that have to do with my question?" and he never answered.

To a reasonable jury, Morgan's response (or more accurately nonresponse) could suggest a hidden race-based (and hence legally improper) motive. And when that strange retort is coupled with Speropoulos' statements (*id.* ¶ 15) that Jewel employees maintained a pattern of informal racial segregation and that to her knowledge she was the only employee involved in an interracial relationship, there is room for an even stronger inference of race-based discrimination.

Because such an inference of discrimination is reasonably permissible, Jewel has not met its burden of establishing the absence of any genuine issue of material fact as to Speropoulos' Title VII claim. Its summary judgment motion must therefore be denied.

*Conclusion*

Speropoulos has provided enough evidence to dodge the summary judgment bullet. At a minimum a genuine issue of material fact exists as to whether Speropoulos would have been discharged but for her interracial relationship. Hence Jewel's Rule 56 motion is denied, and the case will proceed to trial. This action is set for a next status hearing at 9 a.m. March 24, 1999, at which time counsel for the parties should come prepared to discuss the necessary procedures and timetable to lead to a prompt trial.